May it please the court, I'm Thomas Mosley, counsel for the petitioner Salvatore Loria. The single-member, non-presidential board decision under review here erred in holding that Mr. Loria, who had cooperated with the government against defendants from three different organized crime mafia families, was an applicant for admission when he returned to the United States in 2007 after a very short trip abroad. First of all, that decision got the effective date of the controlling IRA-IRA provision wrong. It's March, not March, April 1, 1997 and not September of 1996. Now, under actual board precedent, the determination here is a twofold process when a permanent resident returns to the United States. First, you have to make a determination whether he's an applicant for admission. Secondly, you have to make a determination, if he is, whether or not he's going to be inadmissible. Now, the plain language of the statute, the plain language of the statute, 8 U.S.C. 1101A 1113C little v, says committed. And that should be the determination. Committed an offense identified in section 1182A2. Yes. Yes, Judge Loria, but it says, but it specifically says, but it specifically says committed. And it's virtual. Well, we all know what the concern is. Yeah. Yeah. The Supreme Court in dictum has stated that the committed an offense equates to conviction of a crime. And the question is whether and how we apply Vardalus v. Holder to this. Yes, Your Honor. And why don't you tell us why you think either Vardalus does not say what the government says it says, or if it does, it doesn't bind us. Why don't we hear you on those? I think that language has to be reviewed in context, because what the Vardalus says in that connection is really it's the ease of making a determination with respect to whether the person is or is not an applicant for admission. And you can rely upon the conviction records to show that. But it doesn't specifically address the issue presented here, because in — I've always pronounced it Vartalus, but I'll take Vardalus, too. No, no, I don't know. That's fine. Okay. That in Vartalus, both the offense and the conviction were prior to April 1, 1997. Right. But there's language — I mean, the courts have recognized that it's not crystal clear. But elsewhere in Vardalus, it says the deportation provision involved in St. Cyr — it's talking about a different one — referred to the alien's conviction, while the statutory words in Vartalus were committed an offense. And then it says the practical difference, so far as retroactivity is concerned, escapes from our grasp. I started this by saying this is dictum, as it applies here, but it's Supreme Court dictum, which we usually give particular deference to. So I find it hard to think that Vartalus doesn't speak to this, even though it doesn't speak to it in a controlling way. Well, in that case, there was no practical difference, because both occurred — and I think that's how that language should be — Is there a practical difference here? Oh, indeed, there is a practical difference. The Sixth Racketeering Act extended to September 1998 in his information. Yes. Did he plead to that information? He did. He did plead to that information. The actual plea is not part of the record. But that presents a factual question for a — for determination. And the factual question should be resolved by the immigration judge. In fact, you don't have to necessarily reach the Vartalus issue at the present time if it's remanded for a full factual determination. The record is replete with — the record is replete with statements at 140, 163 to 164 and 187 to the effect that his criminal conduct, as he testified, stopped in 1996. Moreover, the Board of Immigration Appeals decision rests not upon a finding, which the Board couldn't do, but upon a determination that the conviction — excuse me — but upon a determination that the conviction — on a determination that the governing law is 1996, and they were satisfied with 96. At a minimum, I would suggest that the case be remanded for a factual determination as to when the criminal conduct ceased to be — ceased to be committed. MTIA determination was a mistake, though, right? Yes, it was indeed a mistake.  It's not relevant. What? Right. It's not relevant to this decision. Right. But what I'm — what I'm saying is — what I'm saying is on the issue — at the very least, on the issue of — on the issue of when committed, that is something that is a factual determination, very much like, say, the amount of loss. I know Your Honor was on the panel in the Sampath-Kumar where that issue was remanded because the Board engaged in fact-finding there. Similarly, here, it should be — it should be remanded at the very least for a determination of when the — when the offense was committed. Moreover, as — If that's what we find is relevant. Yes. Yeah. No, that's — that's absolutely right. Let me take it to another step, which is, doesn't that show that the ease of application matters? Because here we are, you know, trying to develop when the actual offense occurred. talks about there's a virtue in ease of application for the agency by looking at the date of conviction. Forget about the retroactivity analysis of the statute. But for ease of application, this is the exact kind of problem that they would have to struggle with. Well, I think that can — Judge Droney has exaggerated to a bit in that, for the most part, judgment of conviction, certainly in the federal system, do have an end date. This one, regrettably, did not. Moreover, the process here is not one where inspectors at the airport have to make that determination under the actual case law, the board precedent. This is going to be referred to an immigration judge for a factual determination, which — It doesn't matter as to whether the — the officer online initiates the process. Indeed, I would think that in many cases, perhaps even most cases, using an actual conviction benefits the alien rather than harms him, because it doesn't allow him to fall into this category unless he has actually been convicted of the offense. We wouldn't have situations where you're charged but no conviction has happened yet, or you're charged, acquitted, but there's a preponderance of the evidence that you did it or whatever, and they'd argue that all that matters is that they show that. The conviction gives the alien some certainty that only upon that can he face this consequence. Why isn't that an appropriate way to read it? Well, because, I mean, that — that, Judge Radji, I tend to agree in part, but what we have here is a situation where Congress has chosen — where Congress has chosen the word committed. And I think it's important here in terms of the — this issue wasn't presented — wasn't presented before the Supreme Court in Vardalos. But, for example, the language here is virtually identical to the so-called stop-time rule for eligibility for cancellation of removal, where the language in 129BD1 says that when the alien has committed — and actually it's even stronger — when the alien has committed an offense returned to in Section 212A, that renders the alien inadmissible to the United States under Section 212A. Was that the subject of Centurion? No. That wasn't the subject of Centurion, Judge Loyer. But, I mean, in — in Barakete and his Court's prior jurisprudence, the focus in this statute, virtually identical language, is — is on committed, and therefore is on committed and not on conviction, even though the language is, again, is virtually the same. To get back to your question, though, Judge Loyer, Centurion dealt with — and I submit it should be narrowly construed — it dealt with the — it dealt with the situation of a — of retroactivity of 212C under — under a repeal provision which actually said nothing about the word committed. Here, Congress has — has chosen to use the word — chosen to use the word committed. That panel looked at Vartalus or Vartalus, however you want to pronounce it, and strongly suggested, in that opinion, that it was going to adopt — that it would adopt what the government is urging us to adopt. Well, I — I think — I think that case has to be viewed as — certainly as more narrowly — more narrowly construed in dealing specifically — in dealing specifically with — in dealing specifically with 212C. Do you agree that if I disagree with that, I can apply it? If you find — if you find Centurion controlling here, which I would urge you to not, I think it's very — then I would concede that, obviously. But I don't — I submit that it's not controlling. Moreover, I think Centurion, with great respect, suffered from the same problem that Vartalus did in — same problem that Vartalus did in terms of not really understanding the inspection process. It's not something that — It's a misunderstanding about the Supreme Court, so they may be wrong, but — Well, it — it — the issue really wasn't presented there. Moreover, I think what is important in the Supreme Court's decision is that when Vartalus was first before this Court, in Judge Kearse's opinion, she focused on the fact of committed and said, well, no one — and under the — They specifically rejected that reasoning in the Supreme Court. Right. Your time is up, but I have a practical question to ask you that may not affect our review of this appeal at all. But we have the Immigration Unit of the Justice Department before us in this appeal. What office is the cooperating office? It was the Eastern District of New York. I mean, usually the offices with significant cooperators try to intervene with immigration authorities in some way. I mean, what's — what's going on on that front? That was a — Judge Radley, some time ago when the cooperation occurred, and — and part of the problem here was that the record below wasn't developed for, I guess, for a variety of reasons. I was in counsel below to bring the full extent of his cooperation. We only recently were able to get the — we were able to get the 5K letter unsealed to demonstrate which, if I may, is the government's point — is the — takes the position — the government took the position that the conduct occurred in — between 1993 and 1996. As I said, this is not really our concern for purposes of this appeal, but I just wanted to know if there was background on this that I — that might be of some interest. All right. I know you want to reserve some time. Let's hear from the government. Thank you very much. Excuse me. May it please the Court, my name is Song Park for the Attorney General. The Court should deny this petition for review because the agency properly found Mr. Loria to be a noncitizen seeking admission as a result of his 2004 conviction for racketeering that was based on six different counts, five counts of fraud and one count of money laundering. Because those six acts that underlie his racketeering conviction did not conclude until September 1998, the Court need not actually reach the Martel decision. Where is there evidence in the record to support that that sixth count continued through that period, as opposed to — I mean, your burden would have been only to prove it at the start of the period. At the — if you take a look at the information that is in the record, it — the very last — the sixth racketeering act — I understand that it's charged through that period. Mm-hmm. But that doesn't — that — he didn't have to allocute to continuing through that period. So what is there to support the conclusion that not only is it charged through the period, but it actually did — there's evidence that it continued through then? Well, Mr. Loria did plead guilty to that — to those charges and the facts that's laid out. In fact, there's no indication, at least in the administrative record here, that there was — he contested the allegations in any way, shape, or form. There's no evidence. He had — he made testimony — There's no evidence that he didn't either, right? That's true. But he has always offered testimony to the fact that he sold his interests. And in fact, I think the 20 — the unsealed letter confirms this as well, that he has indicated he sold his business interests in the brokerage firms in September 1996. But there's — That's a continuing benefit from the money laundering. That's correct, Your Honor. Now, if I understand it correctly, though, that's not the — the ruling that we're reviewing did not assume that? The board's decision in the footnote at question. Yes, Your Honor. So the ruling that we're reviewing assumed that he didn't have conduct continuing into 2008, but that rather we were dealing with this question of whether it's the date of the offense or the date of the conviction. That's correct, Your Honor. And it is unfortunate that in the board's footnote at question, the dates that the board cites is not necessarily correct. However, we believe under the — this court has recognized that if sending a case back wouldn't — based on the record before the court and the board, if it is clear that it would be futile, for lack of a better word, to send the case back because the record demonstrates what actually — how the board would have held for this mistake that it made, that there's actually no need for this court to send the matter back to the board. And that would be what we assert here, Your Honor, that — Did anybody try to get the transcript of the plea? It's unclear. I don't believe — at least in the record, it's — there's no question with respect to that, Your Honor. But it is also important to note that the — to the extent that there may be any challenges to the sufficiency of the actual information contained in the information or other related issues that may be raising out of the — coming out of the criminal proceedings, those are issues that are collateral to what the Immigration Court and the Board of Immigration was — of Appeals was charged with doing. So if there is any incorrect information that Mr. Loria is now asserting was contained in the criminal documents that are in the record with respect to the immigration proceedings, then he needs to likely first get that corrected, probably before the criminal court. And in other words — Why don't you address the legal issue? I'm sorry? The legal issue. The Bartolis question, Your Honor. The government's position is that Bartolis instructs or guides — has provided sufficient guidance with respect to whether it's the date of the commission of the offense or the date of the conviction of the offense that matter. And — If they had, the offense would have — any of those dates would have satisfied the conclusion reached in Bartolis. That's correct, Your Honor. Because in Bartolis — So why should — I mean, the language of the statute counsel argues points us to the offense, not the conviction. Do you disagree with that? No, Your Honor. But if you read the entirety of the provision at issue, it says, Bartolis has committed an offense identified in section 1182, subsection A2 of this title. And in turn, 1182A2 refers to convictions of offenses. So I think that's what the Supreme Court in Bartolis was addressing, meaning the — But that would mean committed an offense that is a conviction? Is that what you want us to substitute for, identified in section 1182A? I mean, it would also be read that those offenses to which 1182A2 refers when it talks about convictions for certain offenses, that those are the offenses that matter here. That's correct. So 1182 may be concerned with convictions, but for particular offenses. You want to know what offenses matter for 1101A13? The offenses that are referenced in 1182A2. Not necessarily the fact that there were convictions. 1182, particularly with respect to crimes involving moral turpitude, which is what Mr. Loria was charged with, specifically require either that there's a conviction or that he admits to commit or having admits committed acts which constitute the essential elements of. So I think because of the interplay of the two provisions, that's where the Supreme Court, I think, took a look at the language and the way that specifically subsection C5 applied and determined that the straightforward reading would advert the language committed to an offense to conviction. 1101A13, the committed language to mean convicted. We still have to do that, right? I mean, you can use your reference to the definitions in 1182 to help us do that, but we'd still have to interpret 1101, the word committed, to mean convicted. And that's correct, Your Honor. Can I take you back to 1182? Now, Section A2 has subparts A, which deals with conviction of certain crimes, but it also has Section C, Section D, that don't talk in terms of convictions, but I don't think you'd doubt that controlled substance offense would qualify here. Is that correct, Your Honor, or am I missing something? No, Your Honor. All of those subsections listed. That one doesn't refer to a conviction. It is, is or has been an illicit trafficker in any controlled substance. That's correct, Your Honor. But this is part of the concern I believe was reflected in the Vardalus' decision, which is that. But you said apart from Vardalus, the reference to 1182A2 has to mean conviction because 1182A2 speaks to convictions. But only 1182A and B speak to convictions. C and D don't. That's right. They identify crimes. That's correct, Your Honor. Or offenses. That's right. But it does all tie together back to this concern that was noted by the Vardalus Court, which is that immigration officers who are on the front lines making the initial decisions on this point would sort of, I believe the Vardalus Court used the word pie powder court, which is to figure out the elements of what may consist of crimes of violence. You're saying that the Supreme Court in reading 2A, I guess the entirety of 2, made effectively a policy decision to create a bright line. And a conviction is a bright line. That seems to be what the Supreme Court is getting to because that court there did make a note with respect to, I believe it was in one of the footnote, perhaps footnote 11, that talk speaks to expecting immigration officers on the front lines to sort of engage in all of these different kinds of fact-finding to figure out when an offense occurred, what type of offense it was, what the elements were, what law was in effect at the time, all of that at that moment in order to determine whether certain proceedings must be instituted. So the government's position is going to be that if someone were under indictment for one of these identified offenses and for whatever reason left the country, came back, that wouldn't be enough to trigger the admission language of the statute. It would only be upon conviction that such a person would be subject to the admission exception here. An indictment wouldn't be enough. I think if it's particularly with respect to a CIM type of crime, then certainly, because we have to sort of, I believe, Respondent Petitioner's Counsel referred to how it's sort of a two-step process. One, there has to be determination made as to whether this is an alien that is no longer, who is inadmissible. And two, the basis of removability or inadmissibility. So committed an offense carries the presumption of innocence with it, basically. It's only once you're convicted that this law would view you as having committed an offense. Is that what you're asking us to hold? I think what the government is asking the Court to hold is that – I see that I'm about to run out of time, if I could answer. I think what the government is asking the Court to hold is that in this case, because as a first matter, in this case, the vartalist question need not be answered at all. Because the evidence does indicate that the offense in question here went beyond the effective date of ERIRA. So because Mr. Loria engaged in criminal conduct that post-dated it, there's no retroactivity question here. Let me make sure that I understand that. That is because he continued to benefit from the crime after – in connection with the money laundering charge after the September 1997 date. Is that correct? Correct, in that the money laundering portion of the legal conduct that he engaged in is one of the acts that underlie his racketeering conviction. Would you rather have us define committed to mean convicted? I mean, because the record's not really clear about this, it seems. We spent some time talking about that. It sounds like we'd have to send it back because there's even a mistake in the BIA decision about when it ended. So isn't your principal argument that committed means convicted in the statute? I think if we were to follow the guidance provided by the Supreme Court in vartalist, that's correct, Your Honor. In this case, Your Honor, with respect to the fact-finding issue, we think that there is sufficient information contained in the administrative record that – Isn't that safer? I mean, I don't mean to cut you off from answering Judge Droney's question, but – So we're being asked to do a couple of different things on the legal side, but in connection with interpreting what has committed an offense identified in Section 1182A2 means, that has potential ramifications with respect to who an alien is who's lawfully admitted for permanent residence, right? Correct, Your Honor. Okay, so that has broader ramifications than just this case. That's correct, Your Honor. Isn't it safer for us because there's some ambiguity about the status of his offense and the span of time during which his offense occurred to send it back? And to engage in further fact-finding? Isn't it a much narrower way of dealing with this issue? Would you agree with that? It would be a narrower way of dealing with the issue, Your Honor. The only point on that issue that we would point out is that there is no evidence throughout the course of the entirety of the proceedings where Mr. Loria has ever challenged the dates in question, aside from the financial supports decision. If it goes back, then you win. Well, it's also problematic in that it's one of the RICO predicate acts, right? Correct, Your Honor. You only need two RICO predicates to satisfy the pattern element. So do you know whether he pleaded guilty to all of the predicates or whether he only pleaded guilty to some of the predicates? All that, the document of judgment. Right. So the problem is you're arguing that the indictment says certain things, but it's with respect to a matter that he didn't have to admit in order to be found guilty, and we don't know if he did or not. We don't know if he admitted that predicate at all. We don't know if he admitted it through that time period. I'm always a little surprised that the government, which is the Department of Justice, not just the Immigration Unit, doesn't find this out before you come and argue to us. 2008 is the controlling date here. But you've not looked at the allocution, right? No, because that's one of the issues with the ---- And that's why we're asking you, would this benefit from being sent back so that we can be sure what he allocated to, what the dates were? All of that information, though, likely not to disagree with whether the appropriate course of action here may or may not be remanded for further fact-finding. The only point the government would make on that is Mr. Loria was represented throughout his proceedings, both before the immigration judge as well as the Board of Immigration Appeals. And the board or the immigration court are not to be looking into, like behind a criminal conviction. So if a document with respect to ---- We have a BIA decision that says the conduct ended in September 1996. So, you know, you're saying the board made a finding. Yeah, the board didn't make a finding. You're saying it's a typo or Scrivner's error. But that's what the record is before us. And, again, the government would point to the documents of conviction that remain in the administrative record with respect to whether this court believes that it would be futile to send the case back. But if it disagrees, then obviously remand would be the proper course. You get clarification in front of an immigration judge. That's what you're ---- I mean, you're not ---- The government isn't precluded from getting some clarification on these issues from the immigration judge. I don't ---- No, I don't think there would be any limitations, whether it would be sent all the way down to the immigration judge or whether the board would at their stage. All right. Thank you. Thank you, Your Honors. Mr. Mose. Just very briefly, to address the futility, I don't see a futility point in remand. At one ---- I think your client has double jeopardy protection for that predicate act being used as another predicate or in any other way. I mean, what do you think the effect of that predicate is now? I mean, you know, usually the law is it doesn't ---- even the plea, if he pleaded to the predicate, it might not prevent a substantive act prosecution. But what do you think the ---- I think we may have a statute of limitations problem since this is an event from virtually 20 years ago. So I think that's kind of a moot point. I would just point out that at page 164 of the administrative record, Mr. Loria testifies that the money laundering happened from 1993 to 1996. So there is a factual ---- certainly it's not futile to remand it. And I would also point out that certainly other portions of ---- What page is that? Where does he say that? Yeah. It's in the administrative record at page 164. He says, I left Wall Street in 1996. I didn't step back. So from 1993 to 1996 is really when we perpetrated the crime of money laundering. Where was it that he was saying that? What are you quoting from? I'm quoting from the March 1, 2013 hearing. It's actually on cross-examination by the government. Thank you. So under these circumstances, I would urge that the case be remanded. All right. Thank you very much. Thank you to both sides. We're going to take the matter under advisement.